IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHAN PEREZ, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-CV-4562 |
| | : | |
| CHESTER CI, | : | |
| Defendant. | : | |

MEMORANDUM

SÁNCHEZ, C.J.                                          DECEMBER 16, 2020

Currently before the Court is an Amended Complaint filed by Plaintiff Johan Perez, a

prisoner incarcerated at SCI Chester, pursuant to 42 U.S.C. § 1983, primarily raising claims for

deliberate indifference to his medical needs.  For the following reasons, the Court will dismiss

the Amended Complaint and give Perez an opportunity to file a second amended complaint.

I.        FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Perez's initial Complaint named SCI-Chester as the only Defendant but suggested that

Perez was raising claims against several prison and medical staff for deliberate indifference to

his unspecified medical needs.  In an October 29, 2020 Memorandum and Order, the Court

granted Perez leave to proceed *in forma pauperis* and dismissed his Complaint upon screening

for failure to state a claim.  *See Perez v. Chester CI*, Civ. A. No. 20-4562, 2020 WL 6342769, at

*3 (E.D. Pa. Oct. 29, 2020).  First, the Court dismissed Perez's claims against SCI Chester and

any official capacity claims with prejudice.  *Id.* at *2.  Second, the Court concluded that Perez

had not alleged facts showing that any putative Defendants were personally involved in the

events giving rise to his claims.  *Id.*  Third, the Court concluded that "Perez's Complaint [did]

not state a claim [for deliberate indifference to his serious medical needs] because it lack[ed] any

specific allegations concerning what medical conditions he suffers from, what treatment he claims was required, and how any official at SCI Chester exhibited deliberate indifference to those needs." *Id.* at *3.

The Court gave Perez leave to file an amended complaint, which he did. (*See* ECF No. 11). He named several Defendants, including Wellpath Medical, an entity that contracts with SCI Chester to provide medical care to inmates. The individuals he named as Defendants fall within two general groups. The first group is composed of several prison officials or employees at SCI Chester (collectively "SCI Chester Defendants") — (1) Eason, identified as Warden of SCI Chester; (2) Burgess, identified as a correctional officer; (3) Jefferson, identified as a correctional officer; (4) Deputy Aponte, identified as a Deputy Warden; (5) Lt. Vasquez; and (6) Captain Niece. (*Id.* at 1-3.) The second group is composed of employees of Wellpath (collectively "Medical Defendants") — (1) Dr. Little; (2) Nurse Mitchell; (3) Nurse Bosch; (4) Nurse Johns; and (5) Unknown Nurses. (*Id.* at 1-3 & 22-23.) The Defendants are sued in their individual and official capacities. (*Id.* at 4.)

Perez has been diagnosed with disk and nerve damage in his lower back. (*Id.* at 5.) He claims he has not received adequate medical care for this condition during his incarceration at SCI Chester from January 2020 through the present. (*Id.* at 5 & 24.) Perez was prescribed the following medications, which he claims did not provide relief for his pain: "ibuprofen 800mg 2 times daily, acetaminophen 500mg two tablets 3 times daily, naproxen 500mg 2 times daily, Tylenol-3 four tablets 3 times daily, [and] vicodin 500mg two tablets 3 times daily." (*Id.* at 5-6.) He also received physical therapy, which was discontinued because his "condition was beyond therapy and he was a candidate for pain management and surgery." (*Id.* at 6.)

Perez was thereafter scheduled for three appointments with medical providers outside the facility for additional care.  (*Id.*)  However, Perez missed those appointments because the Defendants failed to adhere to the providers' pre-appointment instructions.  (*Id.*)  Specifically, the Defendants failed to inform Perez of dietary restrictions he was required to abide by prior to his appointments, and to provide him a COVID-19 test in advance of his appointments.  (*Id.*)  The Defendants claimed they did not receive the relevant instructions at the time they scheduled the appointments for Perez, but Perez claims the instructions in question are a matter of "common knowledge."  (*Id.*)

Perez's appointments were rescheduled.  At those appointments, he received a M.R.I. and steroid shots, and was scheduled for surgery.  (*Id.* at 7.)  However, SCI Chester is now on a modified administrative lockdown due to positive COVID-19 cases inside the prison, so medical procedures are on hold.  (*Id.*)  Perez claims he would have already received surgery "if defendants would have followed protocol and prepared him for his [initial] appointments."  (*Id.*)

When Perez returned from his last outpatient appointment, he was housed on the infirmary block, where inmates with serious medical needs are housed.  (*Id.*)  He alleges that he was classified as having "lower bunk, lower tier status," meaning he was to be housed on the first floor with a bottom bunk.  (*Id.*)  However, he was housed on the top tier.  (*Id.* at 7-8.)  After a month of being housed on the infirmary block, Perez was moved to general population, where he was again housed on the top tier despite his medical restrictions.  (*Id.* at 8.)  Accordingly, he experiences pain and discomfort when he uses the stairs to access the phone and inmate kiosk, and to receive medication.  (*Id.*)

Perez "feels that[] defendants are retaliating against, bullying, and subjecting him to extreme stress and anxiety because of multiple grievances that he has filed against staff and

institutional procedures." (*Id.*)  In particular, Perez filed grievances about the adequacy of the medical care he was receiving but was told that "medical treatment is not a grievable issue" and that prison administrative staff could not resolve his medical concerns.  (*Id.*)  Perez claims the retaliation manifested on sixteen occasions over approximately eleven months when Wellpath nurses did not deliver his medications or only delivered some of his medications.   (*Id.* at 9.)

Perez asserts that the Defendants were deliberately indifferent to his serious medical needs by "not providing the level of care or medications needed to minimize [his] pain and anxiety." (*Id.* at 5.)  He notes that, at some point during the course of his care, "Defendants stated that [he] was just using 'drug seeking behavior' and did not have a medical condition that required stronger medications and necessary medical procedure[s]," even though that was not the case. (*Id.* at 7.)  Perez seeks a declaration his rights were violated and injunctive relief directing the Defendants to "upgrade treatment standards, discipline all medical staff, impose methods of enhancement, [and] allow grievances to cover medical [issues]." (*Id.* at 12 & 25.)  He also seeks compensatory and punitive damages.  (*Id.* at 13.)

## II.    STANDARD OF REVIEW

As Perez is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

4

Conclusory allegations do not suffice.  *Id.*  As Perez is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, the Amended Complaint does not state a claim as pled.

### A.  Official Capacity Claims Against SCI Chester Defendants

"Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."  *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020).  Accordingly, Perez's official capacity claims against the SCI Chester Defendants are barred to the extent Perez seeks retroactive relief.[1]  The Court will therefore dismiss those claims.

### B.  Claims Against Wellpath and Related Official Capacity Claims

Perez's has not stated a claim against Wellpath or Wellpath employees in their official capacities, which duplicate his claims against Wellpath.  *See Kentucky*, 473 U.S. at 165-66

---

[1] The Eleventh Amendment does not bar claims for prospective relief against state officials, provided the state is not the real party in interest, because such claims are not treated as claims against the state.  *See Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234, 238 (3d Cir. 2020) ("Under the *Ex parte Young* doctrine, a state official is stripped of his official or representative character" and thereby deprived of the State's immunity, when he commits an ongoing violation of federal law." (internal quotations and citations omitted)); *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (explaining that "implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State" (*quoting Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985))).  However, as explained below, Perez has not stated a claim against a state official.

("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  A private corporation under contract to provide prison health services such as Wellpath may be liable under § 1983 only if that entity's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).

A plaintiff may also state a basis for liability against an entity like Wellpath by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  *Id.*

The Amended Complaint does not tie any of the claimed violations of Perez's rights to a Wellpath policy or custom or to Wellpath's failure to train, supervise, or discipline its staff. Accordingly, the Amended Complaint does not state a claim against Wellpath or Wellpath employees in their official capacities.

### C.  Individual Capacity Claims — No Personal Involvement

Perez has also failed to state a claim against the SCI Chester Defendants and the Medical Defendants in their individual capacities because he has not alleged how each Defendant was involved in the claimed violation of his rights.  "A defendant in a civil rights action must have

personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Perez is raising claims against at least eleven Defendants — some of whom are prison employees, some of whom are medical professionals, some of whom are supervisory officials — based on events that occurred over a period of approximately a year. Throughout the Amended Complaint, Perez repeatedly uses the world "Defendants" to refer to them collectively. He does not explain how each Defendant was involved in the events giving rise to his claims by participating in decisions about his medical care or his cell assignment, denying his grievances, or retaliating against him. In other words, it is not clear what each Defendant did or did not do that violated Perez's rights. Accordingly, Perez has not stated a claim against the named Defendants. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (agreeing with the

district court that the repeated and collective use of the word "Defendants" "'fail[ed] to name which specific Defendant engaged in the specific conduct alleged'").

### D. Claims Based on Grievances

At least some of Perez's claims concern the handling of his grievances.  In particular, he complains that medical issues may not be addressed by the prison's grievance system.  However, claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam).   Perez therefore cannot state a claim based on the manner in which any of the Defendants handled his grievances or any alleged deficiencies in the prison grievance system. Accordingly, the Court will dismiss any claims based on grievances with prejudice.

### E. Deliberate Indifference to Medical Needs

Perez primarily raises claims for deliberate indifference to his serious medical needs based on how the Defendants handled treatment for disk and nerve damage in his lower back. To state a claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

A prison official is not deliberately indifferent " unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." *Farmer*, 511 U.S. at 837.  Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, . . . though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) ("[T]hat some treatment has been provided does not automatically defeat an Eighth Amendment deliberate-indifference claim.")

### 1. Treatment for Lower Back

Perez has not alleged a deliberate indifference claim based on the treatment he received for pain in his lower back.  Perez alleges that he was given a series of medications for his pain and that he was prescribed physical therapy that was discontinued when it did not work.  He was then scheduled for additional procedures with medical providers outside the prison.  Although Perez initially missed those appointments due to the failure of either prison staff or medical staff to abide by pre-appointment instructions, the Amended Complaint reflects that the appointments were rescheduled and that Perez received a M.R.I. and steroid injections.  The Amended Complaint also indicates that Perez was scheduled for surgery and that the reason his surgery

was postponed was an administrative lockdown due to positive cases of COVID-19 at SCI Chester.

These allegations reflect that Perez received treatment for his medical issues and that the level of care he received for his lower backpain progressed when lesser interventions were unsuccessful.  Perez alleges that he was, at some point during this treatment, accused by one or more of the Defendants of engaging in drug seeking behavior that minimized his condition.  But the Amended Complaint does not tie this allegation to the care he received (or to a Defendant or Defendants) in a manner that would evince deliberate indifference.  In other words, it is not clear what, if any, medical care Perez did not receive or what care was delayed or denied as a result of this accusation.  *See Snider v. Pennsylvania DOC*, Civ. A. No. 15-951, --- F. Supp. 3d ---, 2020 WL 7229817, at *53 (M.D. Pa. Dec. 8, 2020) (dismissing Eighth Amendment claim predicated on medical records including notations that inmate was "'faking mental illness and being manipulative' and is a malingerer, omissions from his medical record of what he believes are his 'actual mental illness symptoms,' and a 'false' diagnosis of a personality disorder" where inmate did not tie those allegations to a denial or delay of treatment).

Although Perez alleges that the care he required from outside providers was delayed by the failure to abide by pre-appointment requirements, which he claims should have been "common knowledge," this allegation at most reflects negligence, especially since the Amended Complaint suggests that the Defendants claimed not to have received the relevant instructions. (ECF No. 11 at 6.)  Furthermore, Perez subsequently received a M.R.I. and steroid injunctions at the rescheduled appointments.  Although his surgery has since been delayed, the delay of medical procedures due to a COVID-19 outbreak at the facility does not suggest deliberate indifference.  In sum, Perez has not alleged facts from which the Court could plausibly infer that

any delays or inadequacies in his care are indicative of deliberate indifference as opposed to negligence or (in the case of COVID-related delays) a reasonable administrative concern.  *See Gause v. Diguglielmo*, 339 F. App'x 132, 135 (3d Cir. 2009) (per curiam) ("When a prisoner receives medical treatment and disputes the adequacy of that treatment, we are reluctant to second guess the doctor's medical judgment."); *Visintine v. Zickefoose*, Civ. A.  No. 11-4678, 2014 WL 4388609, at *6 (D.N.J. Sept. 5, 2014) ("Neither inconsistencies nor differences in medical diagnoses, or refusal to consider inmate's preferences can amount to cruel and unusual punishment.").  While the Court is not prepared to say that Perez cannot state a deliberate indifference claim based on the course of care for his back pain, his Amended Complaint falls short of doing so.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant' s liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." (internal quotations omitted)).

        In any event, as noted above, Perez has not alleged facts explaining how the named Defendants were responsible for any delays or deficiencies in his care.  To the extent he is basing some of his deliberate indifference claims solely on certain Defendants' responses to his grievances, "[m]erely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege [a] . . . deliberate indifference claim." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (per curiam); *see also Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor –

who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].").  It is also appropriate for nonmedical defendants such as the SCI Chester Defendants to defer decisions about medical care to medical professionals, *i.e.*, Wellpath and the Medical Defendants.  *See Spruill*, 372 F.3d at 236 ("If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); *Durmer  v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) ("Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.").  So, it is even less clear what the basis for Perez's claims is against the SCI Chester Defendants.

### 2.  Errors in Distribution of Medication

Perez also alleges deliberate indifference in connection with sixteen occasions when he either did not receive his medication or only received some of his medication.  These sixteen instances occurred over a period of over eleven months, with the longest stretch of issues occurring over a five day period in October.[2]  These allegations at most suggests negligence absent additional facts suggesting that the failure to provide medication was deliberate.  *See Ayala v. Terhune*, 195 F. App'x 87, 91 (3d Cir. 2006) (per curiam) (sporadic delays in medication "do not amount to deliberate indifference");  *Wesley v. Murphy*, Civ. A. No. 08-5551, 2010 WL 2736943, at *4 (E.D. Pa. July 12, 2010) ("The Court concludes that the one-week delay in provision of one of three prescription eye-drops to plaintiff, and the substitution of a lower dosage solution for several more weeks, does not constitute deliberate indifference . . .

---

[2] It is not clear from the Amended Complaint whether Perez received none or some medications during this period and which medications he missed.

, particularly in light of the other medical treatment plaintiff admittedly received.").  Although Perez baldly alleges that the nurses harbored a retaliatory motive, as discussed further below, this conclusory allegation is unsupported.

### 3.  Housing on Top Tier

The Eighth Amendment is violated when an inmate has a serious medical need requiring a housing assignment to the bottom tier of a facility or a bottom bunk, and prison officials are deliberately indifferent to that need.  *See Wall v. Bushman*, 639 F. App'x 92, 95 (3d Cir. 2015) (reversing grant of summary judgment where disputed issue of material fact existed from which a rational factfinder could conclude that prison doctor recklessly disregarded prisoner's need for a lower-bunk assignment or denied the lower-bunk assignment for non-medical reasons)); *Vazquez v. Yeoman*, Civ. A. No. 13-01067, 2014 WL 1653113, at *6 (M.D. Pa. Apr. 23, 2014) (allegations "that Corrections Defendants *deliberately* refused to move Plaintiff to the bottom tier, despite knowing of the medical directive to do so" stated a claim); *Guilfoil v. Pierce*, Civ. A. No. 06-493, 2009 WL 688957, at *5 (D. Del. Mar. 16, 2009) ("Refusal of prison officials to assign an inmate with a herniated disc to a bottom bunk may constitute deliberate indifference if the inmate's condition is sufficiently serious.").  Perez has alleged that he suffered from a serious medical need and that he was classified as requiring a bottom tier, bottom bunk assignment.  He also alleged that, despite this directive, he was housed on the top tier of the infirmary ward for a month and again in general population, requiring him to use stairs and causing him pain. Although these allegations could state a deliberate indifference claim, as noted above, Perez does not allege which Defendant or Defendants were responsible for his housing assignments and whether those Defendants were aware of the restriction, so he has not stated a plausible claim as to any of them in connection with this allegation.

F. **Retaliation**

The Amended Complaint also appears to be raising retaliation claims.  In order to state a plausible First Amendment retaliation claim, a prisoner must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  A prisoner's filing of a grievance constitutes constitutionally protected conduct.  *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).  The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation.  *See id*.

Perez alleges that the Defendants "are retaliating against, bullying, and subjecting him to extreme stress and anxiety because of multiple grievances that he has filed against staff and institutional procedures" about his medical care.  (ECF No. 11 at 8.)  Although his filing of grievances is protected conduct, Perez does not allege fact from which it could be inferred that any of the Defendants were aware of his grievances and, thereafter, retaliated against him for filing those grievances.  Because Perez has named several Defendants and because his claims concern conduct over an eleven-and-a-half month period, it is not clear what the factual bases for his retaliation claims are.   The only conduct Perez links to retaliation is the failure of Wellpath nurses to properly distribute his medications on sixteen occasions over the course of his incarceration at SCI Chester.  But it is not clear when Perez filed his grievances or whether any of the nurses would have been aware of those grievances (especially since he suggests that they were denied as non-grievable, possibly by staff at SCI Chester) in a manner that would suggest a

retaliatory motive.  Accordingly, Perez has not stated a retaliation claim.  *See Hammonds v. Headman*, 645 F. App'x 149, 152 (3d Cir. 2016) (per curiam) ("[B]ecause Hammonds' conclusory allegations fail to raise the required inference of a causal link between his grievance and the filing of misconduct reports, he failed to state a retaliation claim."); *Thomas v. Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014) (per curiam) ("Thomas' claims against Dr. Ahner consist of conclusory and somewhat cryptic allegations that Dr. Ahner took Thomas off medication, directed others to do the same, and ordered others to create an extreme and stressful prison environment in retaliation for his 2001 lawsuit. The complaint lacks all detail as to the time, place, or manner surrounding the alleged deprivation and it is entirely unclear from the allegations what level of involvement, if any, Dr. Ahner had in Thomas' care").

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Perez's Amended Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  His official capacity claims against the SCI Chester Defendants and his claims based on grievances are dismissed with prejudice. Perez's remaining claims are dismissed without prejudice to him filing a second amended complaint.[3]  An Order follows, which provides further instruction as to amendment.

BY THE COURT:


**/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, C.J.**

---

[3] According to the Complaint, Perez speaks little English, so he may have received assistance in drafting his claims.  (ECF No. 11 at 9.)  Perez also specifically requested leave to amend in the event his Amended Complaint did not state a claim.  (*Id.* at 10-11.)  In light of the restrictions in place at SCI Chester due to the COVID outbreak and the particular difficulties Perez may have drafting a second amended complaint, the Court will allow him sixty days to file a second amended complaint in this matter.