# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHAN PEREZ, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-CV-4562 |
| | : | |
| CHESTER CI, | : | |
|     Defendant. | : | |

## MEMORANDUM

**SÁNCHEZ, C.J.**                                                                                                                                           **MAY 17, 2021**

Currently before the Court is a Second Amended Complaint ("SAC") filed pursuant to 42 U.S.C. § 1983 by Plaintiff Johan Perez, a prisoner incarcerated at SCI Chester, raising claims for deliberate indifference related to his back condition and retaliation. For the following reasons, the Court will dismiss certain claims and direct service of the SAC as to the remaining claims.

## I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Perez's initial Complaint named SCI Chester as the only Defendant but suggested that Perez was raising claims against several prison and medical staff for deliberate indifference to his unspecified medical needs. In an October 29, 2020 Memorandum and Order, the Court granted Perez leave to proceed *in forma pauperis* and dismissed his Complaint upon screening for failure to state a claim. *See Perez v. Chester CI*, Civ. A. No. 20-4562, 2020 WL 6342769, at *3 (E.D. Pa. Oct. 29, 2020). First, the Court dismissed Perez's claims against SCI Chester and any official capacity claims with prejudice. *Id.* at *2. Second, the Court concluded that Perez had not alleged facts showing that any putative Defendants were personally involved in the events giving rise to his claims. *Id.* Third, the Court concluded that "Perez's Complaint [did] not state a claim [for deliberate indifference to his serious medical needs] because it lack[ed] any

specific allegations concerning what medical conditions he suffers from, what treatment he claims was required, and how any official at SCI Chester exhibited deliberate indifference to those needs." *Id.* at *3.

The Court gave Perez leave to file an amended complaint, which he did on December 2, 2020. (*See* ECF No. 11). He named several Defendants, including Wellpath Medical, an entity that contracts with SCI Chester to provide medical care to inmates. The individuals he named as Defendants fell within two general groups. The first group was composed of several prison officials or employees at SCI Chester (collectively "SCI Chester Defendants") — (1) Eason, identified as Warden of SCI Chester; (2) Burgess, identified as a correctional officer; (3) Jefferson, identified as a correctional officer; (4) Deputy Aponte, identified as a Deputy Warden; (5) Lt. Vasquez; and (6) Captain Niece. (*Id.* at 1-3.) The second group was composed of employees of Wellpath (collectively "Medical Defendants") — (1) Dr. Little; (2) Nurse Mitchell; (3) Nurse Bosch; (4) Nurse Johns; and (5) Unknown Nurses. (*Id.* at 1-3 & 22-23.) Perez asserted claims for deliberate indifference to his medical needs based on assorted delays for care in connection with disk and nerve damage in his lower back, claims related to his placement on a top tier even though he was classified as having "lower bunk, lower tier status," and retaliation in connection with sixteen occasions over the course of eleven months when Wellpath nurses either did not deliver his medications or only delivered some of his medications.

The Court screened Perez's Amended Complaint and dismissed it for failure to state a plausible claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). First, the Court concluded that Perez's official capacity claims against SCI Chester Defendants for retroactive relief were barred by the Eleventh Amendment. *Perez v. Chester CI*, Civ. A. No. 20-4562, 2020 WL 7384888, at *3 (E.D. Pa. Dec. 16, 2020). Second, Perez failed to state a claim against Wellpath or the Medical

Defendants in their official capacities because he did not allege that a Wellpath policy or custom caused the claimed constitutional violations.  *Id.*  Third, Perez's claims against the individual Defendants in their individual capacities failed because he did not allege how each of those Defendants was responsible for the violations of his constitutional rights.  *Id.* at *4.  Fourth, the Court concluded that since there is no constitutional right to the grievance process, Perez could not state a claim based on the handling of his grievances.  *Id.*  Finally, the Court concluded that Perez had failed to adequately allege a basis for a deliberate indifference claim or retaliation claim.  *Id.* at *5-*7.

The Court gave Perez leave to file a second amended complaint, and explained that it was providing him additional time to draft any second amended complaint because it appeared from his filings that he might have been relying on others to draft his claims because he speaks minimal English.  *Id.* at *8 & n.3 ("In light of the restrictions in place at SCI Chester due to the COVID outbreak and the particular difficulties Perez may have drafting a second amended complaint, the Court will allow him sixty days to file a second amended complaint in this matter.").  Perez subsequently filed a letter, which the Court construed as a request for an extension of time and for counsel.  (*See* ECF Nos. 14 & 15.)  So construed, the Court granted Perez's request for an extension and denied his request for counsel without prejudice to Perez renewing that request upon the filing of a second amended complaint, noting that "it [was] difficult for the Court to determine whether Perez is eligible for counsel without a new complaint that explains the claims Perez intends to pursue."  (ECF No. 15 at 1-2.)  The Court reminded Perez to "do the best he can in providing the details of what happened to him, who did what, and who was responsible for the decisions relating to his medical care," and gave him the option of

attaching a supplement in Spanish if he could not "fully explain his claims in English, either on his own or with help . . . ." (*Id.* at 1.)

Perez returned with a Motion for Appointment of Counsel and a Second Amended Complaint ("SAC") naming as Defendants Dr. Little, Ms. Ross, Correctional Officer Vargas and Correctional Officer John Doe.[1] (*See* ECF Nos. 16 & 17.) Perez again raises claims for deliberate indifference to his serious medical needs and retaliation. According to the SAC, on March 19, 2020, Perez was told to go to the prison's intake and that he "had to go on a trip." (ECF No. 17 at 6.)[2] Since Perez does not speak English, he could not communicate with officers or understand what the "trip" was for. (*Id.*) Perez was placed in the prison's transport vehicle and learned from Officer Vargas, who speaks Spanish, that he was being taken to the hospital. (*Id.*) Perez advised Vargas of his back problem and informed him that sitting in the vehicle's seat was placing too much pressure on his back, to which Vargas responded that he had

---

[1] In the Motion for Appointment of Counsel, Perez indicates that he does not read, write, or speak English and states that he was unsure if the inmate who was helping him would be available to continue those efforts. (ECF No. 16.) However, shortly thereafter, he filed his SAC in English, so it appears he was able to obtain assistance in translating and drafting his pleading. The SAC serves as the governing pleading in this case because an amended complaint supersedes the prior pleading. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (per curiam) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019)*, cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted). In determining whether Perez has stated a claim, the Court may not consider the allegations of Perez's prior pleadings, even considering the liberal construction afforded to *pro se* pleadings. *See Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) ("While we appreciate the District Court's apparent intent to analyze Argentina's best case for withstanding dismissal, in light of his pro se status, liberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings.").

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

4

to place Perez in a seated position to fasten his seat belt.  (*Id.*)  Vargas also allegedly said that Perez should endure the pain because the trip would be short.  (*Id.*)

At the hospital, Perez learned that he would not receive any treatment because he had not received instructions not to eat prior to the visit and thus was not able to comply with those instructions.  (*Id.*)  He faults Dr. Little, who appears to have been Perez's treating physician, for failing to advise him of this requirement.  (*Id.*)  Perez indicates that he learned from a Spanish-speaking nurse that the pre-appointment instructions had been "given to the prison's medical staff," but Dr. Little did not inform him of those instructions despite meeting with Perez prior to the hospital trip.  (*Id.*)  Perez surmises that this was "most likely due to various failed attempts; by [Perez]; in filing a grievance for his lack of medical care."  (*Id.*)  As a result of a failure to comply with the instructions, Perez was not able to receive treatment at the hospital that day, which delayed his care.

Perez alleges that on the way back from the hospital visit, the officers who were transporting him — Officers Vargas and Doe — went on a "shopping spree" for cigars.  (*Id.*)  Perez alleges that he communicated to the Officers that being seated in the car caused excruciating pain, but that the Officers completed their hours-long shopping trip while ignoring his "plea of agony."  (*Id.*)

When Perez returned to the prison, he expected to be seen by Dr. Little to explain what happened and for treatment of pain caused by the ride but was instead sent to a unit in the general population.  (*Id.*)  He alleges that Officer Vargas told him to "file a sick call" if he was in pain.  (*Id.*)  When Perez returned to the unit, he filed a grievance about the trip, Dr. Little's failure to communicate instructions to him, and his assertion that his back pain was not being "taken care of."  (*Id.* at 7.)  The next day, Perez filed a sick call.  (*Id.*)  He filed a second sick call

5

after five days passed and he did not receive a response. (*Id.*) Perez then wrote a request to Defendant Ross, the medical supervisor, hoping she would help arrange a medical visit, but Ross did not respond. (*Id.*) Perez subsequently filed a third sick call; he was finally seen by the medical department almost a month after he filed his initial sick call slip. (*Id.*)

Perez alleges that he attempted to file grievances but was unsuccessful because of the language barrier. (*Id.*) Nevertheless he alleges that Ross and Dr. Little became aware of the "failed filings" and that they "made [him] aware they did not take it likely [sic]; when [he was] seen by Dr. Little." (*Id.*) Perez alleges that on or about June 28, 2020, "defendant's campaign of vengeance began" when Perez's medications "began to disappear from the [nurse's] medication carts." (*Id.*)

Perez explains that he receives three medications — one pain reliever and two psychotropic medications. (*Id.*) He states that if he fails to take those medications for some time, he experiences psychological unbalance and/or back pain, depending on which medication is not taken. (*Id.*) Perez appears to be alleging that one medication would be missing for days and then would reappear, but the other medication or medications would then be missing. (*Id.*) Perez alleges that the problems with inconsistencies in his medication lasted until about February 16, 2021. (*Id.*)

Based on these allegations, Perez brings the following claims: (1) an Eighth Amendment claim against Dr. Little for failing to "advise [him] on what to eat so that he may receive treatment"; (2) an Eighth Amendment claim against Ross for "her failure to aid [Perez] in obtaining medical care"; (3) an Eighth Amendment claim against Officers Vargas and Doe for causing and "multiplying" Perez's back pain during transportation to and from the hospital; and

6

(4) a retaliation claim against Dr. Little and Ross for retaliating against him for filing grievances.[3] (*Id.* at 8-9.) Perez seeks damages from the Defendants.

## II. STANDARD OF REVIEW

As Perez is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the SAC if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Perez is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, the Court concludes that Perez has not stated a retaliation claim or a deliberate indifference claim against Defendant Ross. However, the Court will permit Perez to proceed on his deliberate indifference claims against Defendants Little, Vargas and Doe.

---

[3] The Defendants are sued in their individual capacities, except for Defendant Ross, who is sued in both her individual and official capacity as a medical supervisor at SCI Chester. Since the official capacity claims against Ross are essentially claims against the Department of Corrections, those claims are barred by the Eleventh Amendment and must be dismissed. *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity.").

7

### A. Deliberate Indifference Claims Against Dr. Little

Perez brings Eighth Amendment claims against Dr. Little for failing to ensure he received and followed instructions not to eat before his March 19, 2020 visit to the hospital, which caused delays in Perez's care because it prevented him from receiving treatment on that date. To state a claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, . . . though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is

constitutionally intolerable." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) ("[T]hat some treatment has been provided does not automatically defeat an Eighth Amendment deliberate-indifference claim."); *Madera v. Ezekwe*, Civ. A. No. 10-4459, 2013 WL 6231799, at *10-*14 (E.D.N.Y. Dec. 2, 2013) (discussing deliberate indifference in the context of delays in care).

The SAC adequately alleges that Perez's back pain is a serious medical need for which he has been prescribed and receives treatment. *Spruill*, 372 F.3d at 236 (plaintiff alleged serious medical need where "his back condition itself has allegedly required significant and continuous medication, and has caused him excruciating pain"). Additionally, one could infer from Perez's allegations that Dr. Little was the doctor overseeing Perez's care, at least for some period of time, and that Perez was being taken to the hospital on March 19, 2020 to receive treatment prescribed for his back pain. Perez also appears to allege that he was informed by a Spanish-speaking nurse that the instructions regarding the appointment had been passed along from the medical provider to the staff. Liberally construing the SAC, the pleading supports an inference that Dr. Little saw Perez prior to the appointment but failed to ensure that the instructions and procedures were followed so that he received the care he needed. This failure prevented Perez from being treated that day and delayed Perez's treatment, causing Perez to "continue to suffer extr[eme] pain."[4] (ECF No. 17 at 8.) Perez alleges that Dr. Little's failure to inform him of the

---

[4] Although the events of March 19, 2020 have been discussed in some level in all of Perez's pleadings, it has never been clear to the Court exactly what treatment Perez was supposed to receive that day. Perez's Amended Complaint went into more detail about the course of his medical care, indicating that he received steroid shots and a MRI for his back condition and was a candidate for surgery, but was unclear as to the personal involvement of the named defendants, which made it difficult to determine from that pleading who, if anyone, might have acted with deliberate indifference and how. The SAC raises specific allegations about the named Defendants but provides less information about Perez's medical condition and the course of his treatment.

pre-appointment instructions was "most likely due to various failed attempts; by [Perez]; in filing a grievance for his lack of medical care." (ECF No. 17 at 6.) Although this allegation appears speculative, the SAC, read liberally, supports an inference that the relationship between Dr. Little and Perez may have been antagonistic at times. The SAC also alleges that Perez experienced additional delays in his care following the appointment and was not seen again for medical treatment until a month after the visit, and then only after he submitted three sick call slips. Considering the early stage of this case and Perez's particular challenges in presenting his claims, the Court will permit this claim to proceed for further development regarding whether the missed appointment on March 19, 2020 and resulting delays in medical care were the result of deliberate indifference as opposed to negligence.[5] *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."); *Bowens v. Cannon*, 175 F. App'x 635, 636 (4th Cir. 2006) (*per curiam*) (inmate stated claim for deliberate indifference

---

[5] Missed appointments do not necessarily lead to a conclusion that a defendant has been deliberately indifferent. *See Miller v. Steele-Smith*, 713 F. App'x 74, 80 (3d Cir. 2017) ("The lack of an identifiable medical reason explaining a treatment delay does not necessarily mean that the delay was motivated by a non-medical reason."). However, courts often address whether a delay in care for a serious medical need constitutes deliberate indifference at later stages in the proceedings than statutory screening. *See Tormasi v. Hayman*, 452 F. App'x 203, 207 (3d Cir. 2011) (*per curiam*) (upon review of a grant of summary judgment, agreeing "with the District Court that the delay between Tormasi's December 2006 medical request and his August 2007 request, which resulted from a missed appointment, does not reflect deliberate indifference, even if Roach could have (or should have) tracked down Tormasi when he did not show up."); *Figueroa v. Vose*, 66 F.3d 306 (1st Cir. 1995) (unpublished table disposition) (*per curiam*) (affirming grant of summary judgment where "the magistrate correctly found that defendants' failure to bring Figueroa to certain medical appointments did not show their deliberate indifference to his medical needs"); *Morris v. Puleo*, Civ. A. No. 90-0625, 1990 WL 97780, at *5 (E.D. Pa. July 9, 1990) (granting summary judgment to defendant where failure to assure measurement for wrist brace due in part to missed appointment did not violate constitution when defendant's inaction was not "intentionally injurious").

when he alleged, among other things, that medical personnel "caused him to miss follow-up appointments at the hospital by failing to arrange for transportation," and the court could not rule "without at least the aid of a response by the defendants"); *Shepherd v. Fed. Bureau of Prisons*, Civ. A. No. 14-2992, 2015 WL 5692872, at *6 (D.N.J. Sept. 28, 2015) (denying motion to dismiss where "it appears that Plaintiff has sufficiently plead [sic] a cause of action against the non-medical Defendants for failure to take Plaintiff to a scheduled doctor's appointment" and that failure resulted in delayed treatment for his eye, causing permanent injury).

### B. Deliberate Indifference Claims Against Ross

Perez's deliberate indifference claim against Defendant Ross, identified as supervisor of the Medical Department at SCI Chester, is based on her failure to respond to a request Perez filed asking to receive medical attention for his back pain following the failed March 19, 2020 hospital visit. This allegation is predicated entirely on Perez's allegation that he "wrote a request" to Ross after he did not receive a response to his second sick call slip, but that she never responded. (ECF No. 17 at 7.) Perez was ultimately seen after he submitted a third sick call slip; he experienced a total delay of a month. (*Id.*)

The facts alleged here fall short of plausibly alleging Ross's deliberate indifference. The SAC lacks specific factual allegations about what Perez wrote to Ross, and thus what Ross allegedly knew about his condition and treatment, or request for treatment. In any event, absent additional facts, simply being informed of an inmate's medical circumstances through grievances or letters is generally an insufficient basis from which to infer deliberate indifference, especially when the inmate is under the care of a physician. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them

11

to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Diaz v. Warden Lewisburg USP*, 630 F. App'x 148, 151 (3d Cir. 2015) (per curiam) (prison officials who were administrators and who "are not themselves physicians" were not liable for deliberate indifference where plaintiff could not establish that their "involvement in the matter consisted of anything more than, at most, receiving letters from Diaz expressing his dissatisfaction with the medical care he was receiving"); *Burk v. Budd*, Civ. A. No. 18-4702, 2019 WL 3765621, at *4 (E.D. Pa. Aug. 9, 2019) (dismissing claims against defendant based on supervisory liability where "[t]he only fact Burk alleges regarding [the defendant's] personal involvement is that Burk sent letters to [the defendant], but never heard back from him"). Perez has not pled sufficient factual matter here from which the Court could plausibly infer that Ross's failure to respond to his request constituted deliberate indifference to his serious medical needs, so this claim will be dismissed.

### C. Deliberate Indifference Claims against Vargas and Doe

Perez alleges that Defendants Vargas and Doe were deliberately indifferent when transporting him to and from the hospital on March 19, 2020. Perez alleges that he informed Vargas and Doe that being seated in the car placed too much pressure on his back, causing him considerable pain because of his condition. (ECF No. 17 at 6.) On the way to the hospital, Vargas responded that he had to place Perez in the seated position to fasten his seat belt and that Perez would have to endure the pain because the trip was short. (*Id.*) On the return trip, Vargas and Doe allegedly spent hours shopping for cigars despite having been informed by Vargas that being seated in the car caused him excruciating pain. (*Id.*) Since these facts support an inference that Vargas and Doe knowingly and unnecessarily prolonged Perez's back pain so they could

12

shop for cigars, Perez will be permitted to proceed with his deliberate indifference claims against Vargas and Doe at this time.

### D. Retaliation Claims Against Dr. Little and Ross

Count Four of the SAC asserts retaliation claims against Defendants Little and Ross based on allegations that they retaliated against Perez for filing grievances by causing his medication to be inconsistently distributed. In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). A prisoner's filing of a grievance constitutes constitutionally protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See id*.

Perez's retaliation claim is based on his allegation that he did not consistently receive prescribed medication for his back and psychiatric condition from June 28, 2020 until February 16, 2021, following a period when he attempted to file grievances about his medical care.[6] (ECF No. 17 at 7.) Although Perez alleges problems with the proper distribution and receipt of his prescribed medications from the nurse's cart, he does not plausibly allege that Dr. Little and

---

[6] Perez's Amended Complaint identified sixteen occasions over an eleven-month period beginning in January 2020, during which unidentified nurses failed to properly distribute some or all of Perez's medications, with the longest stretch of issues occurring over a five-day period in October 2020. (*See* ECF No. 12 at 12; *see also* ECF No. 11 at 9.) The SAC appears to concern a different time-period beginning June 28, 2020.

Ross caused these issues for the purpose of retaliating against him for filing grievances. Perez claims his "failed filings became known" to Dr. Little and Ross and that Dr. Little made Perez aware that he "did not take it likely [sic]," although it is unclear what is meant by this statement. (*Id.*) However, there is a lack of factual allegations tying these Defendants' awareness of and reaction to Perez's grievances to the issues he experienced with his medication to support a plausible inference either that these Defendants directed the inconsistent distribution of medication or did so with a retaliatory motive. Rather, the SAC simply relies on Perez's conclusory characterization of the situation as a "campaign of vengeance." Accordingly, the SAC falls short of stating a retaliation claim. *See Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation."); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." (internal quotations omitted)).

IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Perez's deliberate indifference claims against Ross and his retaliation claims against Ross and Dr. Little for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will direct service of the SAC so that Perez may proceed on his remaining deliberate indifference claims against Dr. Little, Vargas, and Doe.

                              **BY THE COURT:**

                              **/s/ Juan R. Sánchez**
                              **JUAN R. SÁNCHEZ, C.J.**